a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| CYRUS CASBY #18881-078,<br>Plaintiff | CIVIL DOCKET NO. 1:22-CV-00837<br>SEC P |
| VERSUS | JUDGE DRELL |
| WARDEN MCCONNELL ET AL,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT & RECOMMENDATION

Before the Court is a Complaint filed by pro se Plaintiff Cyrus Casby ("Casby")[1] pursuant to *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*.[2] Casby a prisoner in the custody of the Federal Bureau of Prisons ("BOP"), incarcerated at the United States Penitentiary in Pollock, Louisiana ("USP-Pollock"). He names as Defendants Warden McConnell, HIPPA CEO, M. Morgan, Lt. J. Rene, Dr. King, Dr. Humi, E. Pardo, Chaplain Buzalak, J. Windham, D. Stephenson, C. Nall, Lt. W. Wilson, Lt. Leckie, M. Valentine, Pollock-Medical/Mental Health Service Provider, S. Miller, and C. Neal. ECF No. 7-1 at 1.

---

[1] Casby claims he changed his name to "Mr. Original Juice Mann," but the BOP inmate locator service indicates that his name is still Cyrus Casby.

[2] In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the United Sates Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C. § 1983.

1

Because Casby fails to state a viable claim, his Complaint (ECF Nos. 5, 7) should be DENIED and DISMISSED WITH PREJUDICE.

I. **Background**

Casby alleges that in mid-February 2022, Unit Manager M. Morgan informed him he would have to take a cellmate, and she asked him to choose one. ECF No. 5 at 2. Casby refused. He indicated that he did not want to have a cellmate. *Id.* Casby recounted to M. Morgan that he has gone months without showering at times, and has thought of suicide, homicide, drug use, and would like to be "shipped peacefully" to another facility in lieu of having a cellmate. ECF No. 5 at 2. Casby complained to Morgan that Dr. Humi and Dr. King believe he is "faking." *Id.* He told Morgan that "#CHECKTHEDNA and the Toxic Juice video on Facebook shows how [Casby] was framed for murder." ECF No. 5 at 2. He claims that, because he was wrongfully convicted of murder, he is not safe with a cellmate.

The following day, psychologist E. Pardo met with Casby and told him that he was going to have to get a cellmate. *Id.* at 3. Casby reiterated what he told to M. Morgan about having thoughts of suicide, homicide, and drug use when he has a cellmate, and he requested a transfer to "the ADX or a Mental Institution." *Id.* Casby alleges that Dr. Humi and Dr. King want to "use [Casby] as a case-study/guinea-pig the same way the Tuskegee experimented with Blacks regarding syphilis or the way they gave us AIDS in Africa." Casby claims Defendants want to see him fight or kill a cellmate to prove his "words are real." ECF No. 5 at 4. Casby informed Defendant Pardo that he would rather die than have a cellmate. *Id.*

Casby alleges that a few days after the exchange with Defendant Morgan and session with Defendant Pardo, he also informed Secretary Gryder that he did not want a cellmate and wanted to be transferred. *Id.*

Casby alleges that on March 3, 2022, M. Morgan assigned another inmate to his cell. ECF No. 5 at 5. Casby told Defendant Morgan that he would never voluntarily enter a cell with another inmate. *Id.* at 6. Casby received an incident report as a result of his refusal to comply with Morgan's orders. *Id.* The incident report states that Casby walked "quickly" toward Morgan "with his fist clenched" and yelled at Morgan. ECF No. 5-1 at 1. Casby then began walking to the exit door instead of to his newly assigned cell as instructed. ECF No 5-1 at 1.

Casby was escorted to the SHU where asked Lt. J. Rene and Lt. Wilson to transfer him to another facility rather than have a cellmate. ECF No. 5 at 7. Casby informed Lt. Martinez that he had an "18-year psychiatric history" and would rather die than have a cellmate. *Id.* Lt. Martinez placed Casby on suicide-watch. *Id.*

Casby alleges that he was moved to another room the next day and restrained with chains around his wrists, waist, and ankles. Every 30 minutes, a staff member entered the room to check on him and asked if Casby "had enough." ECF No. 5 at 8. Casby then received two additional disciplinary reports "falsely claim[ing] that [Casby] attempted to head-butt them."[3] *Id.* Casby alleges that the disciplinary

---

[3] The incident reports of March 4, 2022, state that Casby refused to comply with orders, attempted to pull away from officers, and attempted to strike Pardo and Valentine with his head. ECF No. 5-1 at 3, 4.

3

reports "directly contradict" the opinions of Dr. King and Dr. Humi that Casby is "faking." *Id.* at 9.

Lt. Martinez and D. Stephenson continued to try and convince Casby to accept a cellmate. *Id.* Casby alleges that, after those officers left for the day, Lt. J. Rene said he would "take their torture to the next level" if Casby continued to refuse a cellmate. *Id.* Lt. J. Rene removed the restraints and escorted Casby to a cell with another inmate inside. Officers C. Nall and J. Vindham attempted to push Casby inside, but he refused. Casby alleges that he merely "pivoted [his] feet" and was "jumped and beat" by the officers. ECF No. 5 at 10.

Casby was placed on the floor, allegedly injuring his back, knee, and shoulder. *Id.* He was "dragged" back downstairs and placed in 4-point restraints. *Id.* at 11. Casby alleges that the "beating" he suffered was recorded on security cameras. He alleges that Lt. J. Rene "brought a camcorder in the room" and recorded Casby in the 4-point restraints while Defendant Parker described the injuries. *Id.* After Lt. J. Rene left, Lt. Leckie began to check on Casby.

Casby began to hear officers make "Jewish-religious slurs." ECF No. 5 at 12. Casby's Complaint recounts how he recently came to learn of Judaism and requested a kosher diet in an attempt to heal his depression. *Id.* at 13. Casby alleges that Chaplain Buzulak "ignored [his] appeal to be Jewish and recommended Muslim and Rastafarian principles instead." *Id.* Casby alleges that the denial of his religious freedom became a joke for the officers to taunt him while in restraints. *Id.* at 14.

4

Casby alleges that he finally informed Lt. Leckie that he would agree to the cellmate. *Id.* Casby was unrestrained and escorted to a cell. Once inside the cell, Casby asked the cellmate for a razor so he could kill himself. *Id.* The cellmate had no razor, so Casby attempted to hang himself. *Id.*

In an Amended Complaint, Casby alleges that on March 24, 2022, he "snapped" and made another suicide attempt.[4] ECF No. 7-1 at 1. Casby's cellmate went to speak to the Special Investigative Staff about the situation. While he was gone, Casby states that he defecated and smeared the feces on the walls, floor, and window. ECF No. 7-1 at 1.

Lt. LaCroix escorted Casby to an observation cell where he remained until Lt. Martinez returned on March 28, 2022. *Id.* Lt. Martinez and other officers then attempted to force Casby into a cell with a cellmate. *Id.* at 2. Casby refused and again "pivoted [his] feet." *Id.* Casby alleges that Lt. Martinez, S. Miller, and C. Neal all began to beat him while yelling Jewish slurs. *Id.* Casby alleges that he suffered a knot on his right eye, back and spine injuries, and a migraine as a result of the beating. *Id.*

Casby alleges that he was restrained again and threatened with 4-point restrains if he continued to refuse a cellmate. *Id.* Casby received another incident report, which states that Casby lunged at S. Miller and Lt. Martinez and refused to stand up once he was subdued. ECF No. 7-2 at 1. He had to be carried away. *Id.*

---

[4] Casby states: "I tried committing suicide but I can't tie a noose so it didn't sustain when I tried. (NOTE: While single-celled I was never suicidal)." ECF No 7-1 at 1.

II. Law and Analysis

    A. Casby's Complaint is subject to screening under 28 U.S.C. § 1915A.

Section § 1915A provides for the preliminary screening of lawsuits filed by prisoners seeking redress from an officer or employee of a governmental entity. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*); *Rosborough v. Mgmt. and Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003). Section 1915A(b) provides for *sua sponte* dismissal of a complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

    B. Casby fails to state a claim for excessive force against the correctional officers.

Casby names numerous correctional officers as Defendants under *Bivens*.[5] However:

> The Supreme Court has recently reiterated that expanding *Bivens* causes of action is "a 'disfavored' judicial activity." *Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020) (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017)). "[S]eparation-of-powers principles are ... central to the analysis" of *Bivens*'s expansion, and the question is whether Congress or the courts should decide to authorize a damages suit. *Abbasi*, 137 S. Ct. at 1857. In light of the separation-of-powers interests, the Supreme Court has fashioned a two-part test. *Id.* at 1859-60. First, a court must ask whether "[the plaintiff's] claims fall into one of the three existing *Bivens* actions." *Oliva v. Nivar*, 973 F.3d 438, 441 (5th Cir. 2020) (alteration in original) (quoting *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019)). Then, if the case does not fit into existing *Bivens* actions,

---

[5] Casby's titles his Complaint as one under *Bivens* and 42 U.S.C. § 1983. However, since he is a federal prisoner and does not name any state actors as Defendants, his claim is appropriate under *Bivens*, not § 1983.

> the court asks whether there are "special factors counselling hesitation" in extending the *Bivens* remedy. *Abbasi*, 137 S. Ct. at 1857-60.

*Watkins v. Carter*, 20-40234, 2021 WL 4533206, at *2 (5th Cir. 2021).

> The three existing Bivens actions are as follows:
>
>> (1) manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment, *see Bivens*, 403 U.S. at 389–90, 91 S. Ct. 1999; (2) discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment, *see Davis v. Passman*, [442 U.S. 228 (1979)]; and (3) failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment, *see Carlson v. Green*, [446 U.S. 14 (1980)].
>
> *Oliva*, 973 F.3d at 442. "Virtually everything else is a 'new context,'" *Id.* (quoting *Abbasi*, 137 S. Ct. at 1865), because the case needs only to be "different in [one] meaningful way from previous *Bivens* cases" for the "context [to be] new." *Abbasi*, 137 S. Ct. at 1859.

*Id.*

In *Watkins v. Carter,* the plaintiff alleged that correctional officers attempted to force him to share a cell with another inmate. *Id.* at *1. During this time Watkins consistently resisted sharing a cell, claiming to be in fear for his life. He alleged that correctional officers ignored his repeated refusals to be housed with another inmate and began dragging and pushing him into a shared cell. When he resisted, he was allegedly wrestled to the ground by multiple officers and hit in the left ribcage. *Id.* They leg-cuffed him, picked him up, and dropped him in the shared cell. This altercation resulted in Watkins's alleged long-term left ribcage pain. *Id.*

Although unpublished, the *Watkins* decision is illustrative of how the "new context" analysis is applied to Eighth Amendment claims. The Fifth Circuit explained:

> Of the three recognized *Bivens* actions, Watkins's case is most like *Carlson* because it involves alleged violations under the Eighth Amendment. That is, however, where the similarity ends. Watkins's case contains more than one meaningful difference from *Carlson*: Watkins did not die in prison, Watkins did not have mistreated chronic asthma, and *Carlson* did not involve an inmate's unwillingness to be housed with another inmate. Thus, the instant case is a new context.
>
> Second, there are special factors that counsel hesitation. The existence of the Federal Tort Claims Act weighs against inferring a new cause of action. *See Cantú*, 933 F.3d at 423 (citing 28 U.S.C. § 2680(h)). Additionally, the existence of the BOP's Administrative Remedy Program provides an alternative method of relief to *Bivens* actions. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001); 28 C.F.R. § 542.10 (2001); *see Abbasi*, 137 S. Ct. at 1858 ("For if Congress has created 'any alternative, existing process for protecting the [injured party's] interests' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" (alterations in original) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007))).
>
> Because the present case is a new context and there are special factors that counsel hesitation, Watkins does not have a viable *Bivens* claim against the correctional officers.

*Watkins v. Carter*, 20-40234, 2021 WL 4533206, at *2 (5th Cir. 2021).

Like *Watkins*, Casby did not die in prison. He did not have mistreated chronic asthma. And his claim involves his unwillingness to be housed with another inmate. Thus, Casby's excessive force claims present a new context.

Further, there are factors here that counsel hesitation in extending the *Bivens* remedy: (1) the existence of the Federal Tort Claims Act; and (2) the existence of the BOP's Administrative Remedy Program. *See Watkins*, 2021 WL 4533206 at *2 (citing

8

*Cantú*, 933 F.3d at 423; 28 U.S.C. § 2680(h); *Malesko*, 534 U.S. at 74; 28 C.F.R. § 542.10 (2001); *Abbasi*, 137 S. Ct. at 1858; *Wilkie*, 551 U.S. at 550. Casby has the ability to avail himself of both remedies. Thus, Casby does not have a viable claim against the officers for excessive force under *Bivens*.

C. <u>Casby fails to state a First Amendment claim.</u>

Casby alleges that he recently discovered the Jewish faith but was denied a kosher diet. ECF No. 5 at 13. He also alleges that Defendants retaliated against him because of his newly discovered faith. Both of these claims arise under the First Amendment.

Neither the Supreme Court nor the Fifth Circuit have ever recognized a *Bivens* remedy for First Amendment violations. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012) ("We have never held that *Bivens* extends to First Amendment claims."); *Butts v. Martin*, 877 F.3d 571, 587 (5th Cir. 2017); *Brunson v. Nichols*, 875 F.3d 275, 279 n.3 (5th Cir. 2017); *Webb v. McQuade*, 21-CV-254, 2022 WL 136464, at *6 (W.D. Tex. Jan. 14, 2022); *Butts v. Martinez*, 1:12-CV-114, 2021 WL 1085310 (E.D. Tex. Mar. 8, 2021), *report and recommendation adopted*, 2021 WL 1061184 (E.D. Tex. Mar. 18, 2021); *Biron v. Upton*, 4:15-CV-205, 2020 WL 85146, at *5 (N.D. Tex. Jan. 7, 2020). Thus, Casby's First Amendment claims also present a new context under *Bivens*.

The fact that there is an administrative remedy procedure through the BOP again counsels against the extension of the *Bivens* remedy. And numerous courts post-*Abbasi* have recognized that the Administrative Remedy Program is an

9

alternative process and a special factor that forecloses expansion of the *Bivens* remedy.[6]

To the extent Casby seeks injunctive relief under *Bivens* in the form of an order instructing the BOP to provide him with a kosher diet, his claim also fails. *Bivens* does not authorize claims for injunctive relief. *See Patel v. Santana*, 348 Fed.Appx. 974, 976 (5th Cir. 2009) ("[I]njunctive relief against the BOP [is] a form of relief that would not be proper under *Bivens*.") (citing *Bush v. Lucas*, 462 U.S. 367, 378 (1983)); *Solida v. McKelvey*, 820 F.3d 1090, 1093 (9th Cir. 2016); *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities."); *Casby v. Unknown Named Agents*, 1:21-CV-00143, 2021 WL 2389710, at *2 (W.D. La. Apr. 21, 2021), *report and recommendation adopted*, 2021 WL 2383940 (W.D. La. June 10, 2021) (dismissing Casby's prior *Bivens* suit seeking an order for a single-cell assignment or transfer). Even if injunctive relief was available under *Bivens,* the BOP's administrative remedy process is available to Casby and counsels against the extension of the *Bivens* remedy.

---

[6] *See, e.g., Webb*, 2022 WL 136464, at *6; *Brunson v. Nichols*, 2018 WL 7286410, at *3 (W.D. La. Dec. 7, 2018), *report and recommendation adopted*, 2019 WL 545479 (W.D. La. Feb. 11, 2019)); *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018); *Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018); *Muhammad v. Gehrke*, No. 2:15-CV-334, 2018 WL 1334936, at *4 (S.D. Ind. Mar. 15, 2018); *Howard v. Lackey*, No. 7:16-CV-129, 2018 WL 1157547, at *3 (E.D. Ky. Mar. 5, 2018); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 60 (E.D. N.Y. 2017).

### D. Casby fails to state a claim for the denial of medical care.

Casby requests a mental health evaluation at a different facility as well as physical therapy. To the extent Casby claims Defendants denied him medical care, his claim fails.

First, it is unclear whether *Bivens* extends to Casby's claim post-*Abbasi*. In a post-*Abbasi Bivens* action by a federal prisoner complaining of the denial of medical care for an injured ankle, the Fifth Circuit assumed without deciding that *Bivens* reached the Eighth Amendment claim of deliberate indifference to medical needs. *Petzold v. Rostollan*, 946 F.3d 242, 248 (5th Cir. 2019). But the court noted: "[I]f we were to address whether *Bivens* extends to this context in light of *Abbasi*, Petzold's deliberate-indifference claims based on denied medical treatment are likely a 'new [*Bivens*] context' because they 'differ in a meaningful way' from existing *Bivens* claims." *Id.* at 248 n.21 (citations omitted). And the FTCA and prison grievance system can provide other avenues of relief.

Nonetheless, even if *Bivens* extends to Casby's claim, he does not allege a constitutional violation. Although the Eighth Amendment does not explicitly mandate a certain level of medical care for prisoners, the cruel and unusual punishment clause has been interpreted to impose a duty on prison officials to provide inmates with adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999). A prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth

11

Amendment, whether the indifference is manifested by prison doctors or by prison guards. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 754 (5th Cir. 2001).

An Eighth Amendment claim consists of two components: one objective and one subjective. *Farmer*, 511 U.S. at 839. To satisfy the objective requirement, the plaintiff must prove that he was exposed to a substantial risk of serious harm. *Id.* at 834; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002). The plaintiff must also demonstrate that the defendant was deliberately indifferent to that risk. *See Farmer*, 511 U.S. at 834; *Lawson*, 286 F.3d at 262. The deliberate indifference standard is a subjective inquiry. A plaintiff must establish that the defendant was aware of an excessive risk to the plaintiff's health or safety, and consciously disregarded the risk. *See Farmer*, 511 U.S. at 840-41; *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002).

Casby has not alleged deliberate indifference. Casby alleges that he has been seen by "more than several psychiatrists" and has taken psychiatric medication for years in BOP custody. ECF No. 5 at 2, 7-2 at 2. Casby indicates that he has been treated by Dr. Humi, Dr. King, and Psychologist Pardo at USP-P. *Id.* at 3. According to his exhibits, M. Morgan called psychology staff to meet with Casby on March 3, 2022. A suicide risk assessment was conducted that day. ECF No. 5-1 at 1. In fact, every time Casby threatened self-harm, he was removed from the cell and monitored. ECF Nos. 1, 5, 7.

Casby's disagreement with the opinions of his mental health providers does not support an Eighth Amendment claim. *See Rodriguez v. Bexar Cty. Hosp. Dist.*, 14-CV-861, 2015 WL 7760209, at *37 (W.D. Tex. Nov. 30, 2015), *aff'd sub nom. Rodriguez v. Garcia*, 692 F. App'x 771 (5th Cir. 2017) (citing *Norton v. Dimazana*, 122 F.3d at 291-92; *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)) ("A mere disagreement between an inmate and his physician concerning whether certain medical care was appropriate (including the use of restraints to prevent a psychotic patient who has engaged in violent behavior from harming himself and others) is actionable under Section 1983 only if there are exceptional circumstances.").

To the extent he seeks physical therapy, Casby does not allege that he ever requested or was denied any prescribed physical therapy. ECF Nos. 1, 5, 7. Moreover, Casby's claim that he needs physical therapy is conclusory and baseless. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (conclusory allegations are "not entitled to the assumption of truth").

### E. Casby cannot state a claim for verbal taunts.

Casby complains that Defendants teased or taunted him about his newfound religion. Again, this presents a "new context" where *Bivens* should not be extended. *See Jackson v. Lara*, 1:19-CV-150, 2022 WL 822129, at *4 (E.D. Tex. Feb. 4, 2022), *report and recommendation adopted*, 2022 WL 822109 (E.D. Tex. Mar. 17, 2022) (the plaintiff does not have viable claims for excessive force, verbal abuse, or failure to protect the plaintiff from self-inflicted harm under *Bivens* post-*Abbasi*). Even if the claim could be brought under *Bivens*, verbal threats and taunts do not rise to the

13

level of a constitutional violation. *See Westbrook v. Treon*, 78 F. App'x 970, 972 (5th Cir. 2003) (citing *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)).

### F. Casby is not entitled to a transfer.

Casby previously filed suit in this Court asking that he be reclassified for a single cell or transferred to another facility. ECF Nos. 1 at 5; 2 at 10. Alternatively, he requested a lower custody classification. *Casby v. Unknown Named Agents*, 1:21-CV-00143 (W.D. La.), ECF Nos. 1 at 5; 2 at 10. The claim was denied because a prisoner has no constitutional right to a particular housing assignment or to be housed at a different facility. *Casby v. Unknown Named Agents*, 1:21-CV-00143, 2021 WL 2389710, at *1 (W.D. La. Apr. 21, 2021), *report and recommendation adopted*, 2021 WL 2383940 (W.D. La. June 10, 2021) (citing *Olim v. Wakinekona*, 461 U.S. 238, 244–47 (1983); *Ramirez v. Cotrette*, 572 F. App'x 276, 277 (5th Cir. 2014)). Further, a prisoner has no protectable interest in his custody classification. *See id.* (citing *Moody v. Baker*, 857 F.2d 256, 257–58 (5th Cir. 1988); *Meachum v. Fano*, 427 U.S. 215 (1976)). Thus, even if the claim could be raised under *Bivens*, it is meritless.

### III. Conclusion

Because Casby cannot state a claim under *Bivens* and his claims are meritless, IT IS RECOMMENDED that the Complaints (ECF Nos. 5, 7) be DENIED and DISMISSED WITH PREJUDICE under § 1915A.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Wednesday, May 4, 2022.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE